IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 10-739 |
| DARWIN LAMONT PASS | |

## MEMORANDUM OPINION

Defendant Darwin Lamont Pass moves for compassionate release from jail pursuant to the First Step Act, 18 U.S.C. §3582(c)(1)(A)(i), in consideration of the dangers posed by COVID-19. For the reasons that follow, Pass's motion will be denied.

Pass was charged with mail fraud, in violation of 18 U.S.C. §1341. He pled guilty and was sentenced to prison and a term of supervised release. He served his time in jail. Once on supervised release he admits that he "was in violation . . . on several occasions." He also acknowledges that he has struggled with drug use. In August 2018, at a violation hearing, he stipulated to driving a truck out of state in violation of his terms of release and also to having possessed a non-controlled contraband substance. At that hearing, the court expressed concern about Pass driving with cocaine in his system, noted that such behavior posed "a tremendous danger [and] disrespect for the law," then sentenced him to a year and a day in prison with no supervised release to follow. Pass served the first part of this sentence at a halfway house but was ordered to complete his sentence at the Federal Detention Center in Philadelphia ("FDC") when he violated the facility's drug and alcohol policy.

Pass remains incarcerated at the FDC and is due to be released on May 30, 2020. Pass describes himself as "obese" and as suffering from diabetes and sleep apnea, a respiratory condition. In consideration of his underlying medical condition and of the dangers posed by

COVID-19, he petitioned the FDC for early release. His request was denied on April 24, 2020. He now seeks immediate compassionate release pursuant to Section 3582(c) of the First Step Act.

Section 3582(c) now "allow(s) incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019). Specifically, provided the defendant has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] §3553(a)[1] to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). According to Section 1B1.13 of the Sentencing Guidelines, a defendant's medical condition may be an "extraordinary and compelling" reason for release if that condition "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. §1B1.13 n.1.

Additionally, to determine whether a defendant is entitled to compassionate release, a court must consider whether the defendant poses a danger to others and to the community per 18 U.S.C. §3142(g).[2] *See id.* at §1B1.13(2).

---

[1] Section 3553(a) directs a sentencing court to consider:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

[2] In the compassionate release context, "[t]he relevant factors in this section are: (1) the nature of the charged

Here, the parties agree that Pass has exhausted his administrative remedies and that he suffers from a medical condition. However, the government argues that he should not be released because "his medical conditions are appropriately managed at the facility" and because "[he] presents a danger to the community."

Looking to whether Pass's condition in conjunction with the COVID-19 crisis presents an extraordinary and compelling circumstance, "[t]he government acknowledges that the risk of COVID-19 presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility,' . . . as, due to his comorbidities, the defendant may be less able to protect himself against an unfavorable outcome from the disease." However, Pass does not assert that he has COVID-19. Nor does it appear that there is a lesser risk of infection should he be released rather than finish his sentence at the Federal Detention Center. The Bureau of Prisons ("BOP") has instituted strict containment measures at the FDC, such as mandatory quarantine, regular health checks, limits on inmate movement, and limitations on entry by outside individuals, to prevent spread of the virus within the prison population, see https://www.bop.gov/resources/news/20200313_covid-19.jsp.4. *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (noting that a court may take judicial notice of information on a government website).

While two FDC staff members have tested positive for the virus as of the writing of this opinion, one of those staff members has already recovered, *see*

---

offense; (2) the defendant's history and characteristics, including the person's character and whether the person was on parole or probation at the time of the offense; (3) the nature and seriousness of the danger to the community posed by the person's release." *United States v. Reyes*, 2020 WL 1663129, at *3 (N.D. Ill. Apr. 3, 2020); *see also United States v. Johns*, 2019 WL 2646663, at *3 (D. Ariz. June 27, 2019) ("Factors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger.").

https://www.bop.gov/coronavirus/.  But, this fact alone does not suggest that Pass would be better off on the outside rather than in prison.  Although Pass states that "he will reside with his fiancée" in Upper Darby and "seek self-quarantine" if released, he has provided no information about his future living accommodations beyond what has been described: no indication of whether his fiancée has been tested, whether she has or does not have COVID, whether anyone else lives in the house, whether they have or do not have the virus, or whether anyone else who is living in the house has been socially isolating to protect themselves and others appropriately.  Notably the Eastern District of Pennsylvania is home to the Pennsylvania counties hardest hit by the virus, while the FDC has no confirmed inmate cases.  *See* https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.  Delaware County alone, where Upper Darby is located, has more than 4600 confirmed cases.  *Id.*  The Court therefore has little basis on which to conclude that Pass would be at a lower risk of contracting COVID-19 outside of prison then if he were to remain there.  As the Third Circuit recently noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Turning to whether the Section 3553(a) factors favor release, *see United States v. Winckler*, 2020 WL 1666652, at *2 (W.D. Pa. Apr. 3, 2020) (considering Section 3553(a) factors following determination that extraordinary and compelling circumstances favored release): while it is uncontested that Pass's underlying offense—mail fraud—was nonviolent and that his supervised release violations have also been nonviolent, that does not mean Pass's behavior has not been *dangerous*.  Driving while under the influence of drugs is dangerous, life-threatening

behavior. [5] In addition to displaying a disregard for public safety, Pass has displayed a disrespect for the law by repeatedly violating his conditions of supervised release. As for Pass's risk of reoffending, his history of violations suggests that he is likely to reoffend if released. To wit, when Pass was furloughed to a halfway house in January 2020, he violated the facility's drug and alcohol policy *within less than three weeks* of being there and was therefore returned to prison. The Court thus finds that reducing Pass's sentence to time served would be inconsistent with the Section 3553(a) factors.

Finally, turning to the Section 3142(g) factors for assessing dangerous to others and the community, the same history and characteristics which disfavored release under Section 3553(a) disfavor release under this section. As noted, Pass has demonstrated a disregard for public safety and a readiness to disobey court orders and has, as such, put the public at risk. Consequently, he would present a danger to others and the community if released.

An appropriate order follows.

**May 8, 2020**                                                            **BY THE COURT:**

/**s**/ *Wendy Beetlestone*
_____
**WENDY BEETLESTONE, J.**

---

[5] "[A]ccording to the Governors Highway Safety Association, 43.6 percent of fatally injured drivers in 2016 tested positive for drugs and over half of those drivers were positive for two or more drugs." https://www.drugabuse.gov/publications/drugfacts/drugged-driving.